UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| RALPH CAIN, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 6:16-cv-1222-RDP |
| } | |
| NANCY A. BERRYHILL, } | |
| ACTING COMMISSIONER } | |
| OF SOCIAL SECURITY, } | |
| | |
| Defendant. | |

## MEMORANDUM OF DECISION

Plaintiff Ralph Cain ("Plaintiff" or "Cain") brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"). Plaintiff seeks review of the decision by the Commissioner of the Social Security Administration ("Commissioner") to deny his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed his applications for DIB and SSI on March 12, 2013, alleging disability beginning August 22, 2012. (Tr. 19, 118). The claim was initially denied on June 24, 2013. (Tr. 19). After his application was denied, Plaintiff filed a written request for hearing pursuant to 20 CFR § 416.1429 *et seq.* (Tr. 19). On July 9, 2014, Plaintiff received a video hearing before Administrative Law Judge ("ALJ") George W. Merchant. (Tr. 19, 27). The ALJ determined that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Act. (Tr. 27).

On May 26, 2016, the Appeals Council denied Plaintiff's request for review of the ALJ decision. (Tr. 1). Following that denial, the final decision of the Commissioner became a proper subject of this court's appellate review. *See Chester v. Bowen* 792 F.2d 129, 131 (11th Cir. 1986) (finding the ALJ decision final for purposes of judicial review when the Appeals Council denied review).

Plaintiff Ralph Cain was 54 years old at the time of the hearing. (Tr. 39). He attended school through the tenth grade, but testified that he reads and writes only "very simple words." (Tr. 38-39, 42, 54, 184). He previously worked for K&H Trucking doing heavy lifting and manual labor, changing oil, changing tires, and generally performing the duties of a mechanic's helper on diesel-type equipment. (Tr. 38-40, 49). He also worked for Southern Energy Homes as a manufactured buildings assembler, a medium exertional job. (Tr. 40, 49, 54-57). Plaintiff alleges that he has not been able work since August 22, 2012 due to injuries in his arms, back, and collarbone, hernias, and high blood pressure. (Tr. 38, 40-46, 152, 183).

Plaintiff experienced an on-the-job work injury in August 2002[1] from which maintains he continues to have some residual effects. Plaintiff was putting air in a truck tire when the tire exploded and struck him. (Tr. 34, 41, 46, 267, 270). "And it undoubtedly was a defective rim, and it come off, and blowed me about 45 feet in the air from the shock, and I had to be ambulanced out of there …" (Tr. 41). The rim crushed his dominant left hand which now "…stays numb all the time" and makes Plaintiff unable to grip things. (Tr. 41, 319). The doctor report from the day of the incident indicates that Plaintiff had "…taken more of a blow to his left arm." (Tr. 270). Plaintiff continued to go to the doctor's office and physical therapy as

---

[1] In the ALJ hearing and in his brief, Plaintiff indicates that this injury occurred in 2004. (Tr. 40; Doc. #12 at 2). However, the medical records reveal that the injury occurred in 2002. (Tr. 267).

2

recommended and, on December 16, 2002, the doctor stated that "…he can go to full duty" without any restrictions, but with a 5% whole man impairment.[2] (Tr. 267).

Other than testimonial assertions, the medical record contains no documentation for ten years, from 2002 until 2012.[3] During that period of time, Plaintiff continued to work despite the nerve damage issues from the on-the-job injury. (Tr. 21, 43, 267). Plaintiff presented to the emergency room at Walker Baptist Medical Center with sudden abdominal pain on August 23, 2012.[4] (Tr. 217-27). Plaintiff had been lifting heavy tires at work and noticed a bulge and pain in the left inguinal[5] region. (Tr. 49, 218). He was diagnosed with a left inguinal hernia and was instructed to make an appointment with surgeon Dr. Matthew Knight. (Tr. 220). Plaintiff was again seen at the same emergency room, for the same left inguinal hernia, on August 27, 2012 because he had run out of pain medication and had not yet seen the surgeon for repair of the hernia. (Tr. 206-16).

Plaintiff was seen for a consultation with Dr. Billy Richardson on September 27, 2012. (Tr. 232). A CT scan was performed of Plaintiff's abdomen and pelvis, which revealed a

---

[2] Plaintiff testified that he also broke his right shoulder in the 2002 tire rim incident and continues to have problems raising his right arm. (Tr. 41-43). There is no medical documentation of the right shoulder injury; however, consulting examiners noted deformity in Plaintiff's right shoulder without limitations to range of motion or pain on examination. (Tr. 323).

[3] Plaintiff testified that in 2007 he was robbed while cashing a check in Parish, Alabama. (Tr. 42). He stated that he was "stabbed seven times in the back" and "was bleeding to death, and then the ambulance carried me to the house to meet the lifesaver [helicopter]." (Tr. 42). Plaintiff testified that he continues to experience pain from this event, including "lower back pain and sharp pains down to the leg, down through the leg." (Tr. 42). UAB has no medical records of this happening, and Plaintiff has no photographs of his back. (Tr. 47, 48).

[4] At the time of this emergency department visit, Plaintiff told the nurse practitioner that he had bilateral hernia repair in the past by Doctors Richardson and Baker. (Tr. 218). At the time of his October 2012 surgery, a note under "previous operations" states: left inguinal hernia repair, right inguinal hernia repair x2." (Tr. 232). At the hearing before the ALJ, claimant's attorney stated that Plaintiff had four hernia repairs. (Tr. 38). "He had another one in 1970, and he can't remember when the other one was." (Tr. 38). There are no medical records to support these assertions.

[5] According to the online Merriam-Webster Dictionary, the definition of inguinal is: "of, relating to, or situated in the region of the groin or in either of the lowest lateral regions of the abdomen." *See* https://www.merriam-webster.com/dictionary/inguinal (last accessed July 13, 2017).

probable hernia in the left inguinal area. (Tr. 232, 237). Mild inflammation of Plaintiff's colon, consistent with mild diverticulitis, was noted and Plaintiff was put on antibiotics. (Tr. 232, 237). At this appointment, Plaintiff was encouraged to establish care for high blood pressure. (Tr. 232).

On October 1, 2012, Plaintiff went to Capstone Rural Health Center to establish care for hypertension. (Tr. 243). Notes from that visit state "Patient states he passed out 1-2 weeks ago. He was told by paramedics he had HTN [hypertension]. hx of high blood pressure. States needs to have hernia surgery but cannot due to elevated blood pressure." (Tr. 243). Plaintiff was prescribed Lisinopril for high blood pressure. (Tr. 244). Plaintiff returned to Capstone Rural Health Center on October 15, 2012 for a follow-up appointment and stated that he was feeling much better. (Tr. 241). He was again seen on November 13, 2012 for a refill of Lisinopril. (Tr. 240).

Plaintiff followed up with Dr. Richardson on October 15, 2012 and stated that his abdominal pain was much improved, still with some tenderness and bulging in the left inguinal area. (Tr. 232). On October 23, 2012, Plaintiff had surgery for the recurrent inguinal hernia, which was repaired with extra-large mesh and plug. (Tr. 229-30).

## II.     ALJ Decision

The Act uses a five-step sequential evaluation process to determine a claimant's disability. 20 C.F.R. § 404.1520(a) and 416.920(a). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b) and 416.920(b). Substantial gainful activity is work done for pay or profit that requires significant physical or mental activities. 20 C.F.R. § 404.1572(a-b) and 416.972(a-b). If the claimant has employment earnings above a certain threshold, the ability to engage in substantial gainful

activity is generally presumed. 20 C.F.R. § 404.1574, 404.1575, 416.974, and 416.975. If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability, regardless of a medical condition or age, education, and work experience. 20 C.F.R. § 404.1520(b) and 416.920(b).

Second, the ALJ must determine whether the claimant has a medically-determinable impairment that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c) and 416.920(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or functionally equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. If the criteria for impairment is met or functionally equal, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

Once the ALJ has determined Plaintiff's RFC, the ALJ will consider in step 4 whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. § 404.1520(f) and 416.920(f). If the claimant is found capable of performing past relevant work, then the claimant is not disabled. *Id.* If the claimant is unable to perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v) and 416.920(a)(4)(v). In the fifth step, the ALJ will determine whether the claimant is able to perform any other work in the national economy that is commensurate with their RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Although the claimant must still prove disability, at this point the burden of production shifts from the claimant to the ALJ. The ALJ must provide evidence, in significant numbers, of jobs in the national economy that the claimant can do, given their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.912(g) and 416.960(c).

Here, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 12, 2103, the application date. (Tr. 21). Plaintiff was found to have the following severe impairments: hypertension; lumbago secondary to remote L3 compression fracture; and status post left and right inguinal hernia repair. (Tr. 21-22). Considering these severe impairments, the ALJ determined that Plaintiff maintained the residual functional capacity to perform a full range of medium work as defined in 20 C.F.R. § 416.967(c), including his past relevant work as a diesel mechanic helper and as an assembler. (Tr. 23-26). Specifically, the ALJ found that Plaintiff had performed these jobs within the past 15 years at earnings levels exceeding substantial gainful activity and did so for a sufficient period of time to have fully learned the duties required by those jobs. (Tr. 26). In comparing Plaintiff's residual functional capacity with the physical and mental demands of this work, the ALJ found that Plaintiff was able to perform his work as a diesel mechanic as it is generally performed and his work as an assembler as it is actually and generally performed. (*Id.*).

Based on these findings, the ALJ determined that Plaintiff was not under a disability, as defined in the SSA, since March 12, 2013, the date the application was filed. (*Id.*).

### III.   Plaintiff's Argument for Reversal

Plaintiff advances a single argument for remand or reversal of the ALJ decision – that the ALJ erred by finding "that a 54 year old individual who has had three prior hernia surgeries trying to perform those very same types of jobs can still return (or should return) to do such medium or heavy past work again now." (Doc. #12 at 8-9).

### IV.   Standard of Review

Judicial review of disability claims under the Act is limited to two questions: (1) whether the record reveals substantial evidence to sustain the ALJ's decision; and (2) whether the correct

legal standards were applied. 42 U.S.C. § 405(g); *see Wilson v. Barnhart,* 284 F.3d 1219, 1221 (11th Cir. 2002). If the Commissioner's findings are supported by "substantial evidence," they are conclusive. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). If supported by substantial evidence, the Commissioner's factual findings *must* be affirmed, even if the record suggests otherwise. *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1159 (11th Cir. 2004) (emphasis added). Nevertheless, while the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Legal standards are reviewed *de novo*. *Moore*, 405 F.3d at 1211.

**V.     Analysis**

Plaintiff argues that the ALJ erred in finding that, despite his severe impairments, he maintains the residual functional capacity to perform his past relevant work at a medium level of exertion. (Doc. #12 at 9). For the reasons set forth below, the court concludes that substantial evidence supports the ALJ's finding and that proper legal standards were applied.

Residual functional capacity ("RFC") is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). In determining whether a claimant can return to his past relevant work, the ALJ will use all relevant medical and other evidence in the case. *Id.*; *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An ALJ makes an RFC determination by considering the claimant's ability to sit, stand, walk, lift, carry, push, pull, stoop, crouch, and

reach. 20 C.F.R. § 404.1545(b). "Along with [a claimant's] age, education and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work." *Lewis*, 125 F.3d at 1440; 20 C.F.R. § 404.1520(f). To determine the physical exertion requirements of jobs in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* § 404.1567(c). It is ultimately the claimant's burden to demonstrate that he cannot return to past relevant work both as he actually performed it and as it is generally performed in the national economy. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990); *Simpson v. Comm'r*, 423 Fed. Appx. 882, 884 (11th Cir. 2011); 20 C.F.R. § 404.1520(1)(4)(iv).

Plaintiff states that "[s]ubstantial evidence in the case only supports a determination that the claimant's residual functional capacity is limited to performing light or sedentary jobs. The claimant has had three hernia surgeries (two on the right and one on the left). The last one (on the left) was in 2012. (Tr. 43). His doctor told him he should not do any more heavy lifting. (Tr. 44)." (Doc. #12 at 9). But, quite to the contrary, there is *no* medical evidence to support a claim that he can only perform, at most, light exertional jobs. The mere fact that Plaintiff has had three hernia surgeries does not mean that he can only perform light or sedentary jobs. (Doc. #12 at 9). Although Plaintiff testified that he was told not to perform heavy lifting by one of his doctors (Tr. 174), the medical evidence does not support the claim (Tr. 222). The "evidence" consists of a rote form about hernias encouraging patients with active hernias to avoid lifting activities. (*Id.*). The only available medical evidence specifically related to Plaintiff's limitations is provided by Dr. Bruce Romeo, a certified independent medical examiner with the Alabama Center for Occupational Medicine and Prevention. (Tr. 319). Dr. Romeo noted that

8

Plaintiff had undergone four hernia repairs, one of which was documented. (*Id.*). He determined that Plaintiff could continuously lift up to 10 pounds, frequently lift 11 to 20 pounds, and occasionally lift 21 to 50 pounds. (Tr. 328). He determined that Plaintiff could continuously carry up to 10 pounds, frequently carry 11 to 20 pounds, and occasionally carry 21 to 50 pounds. (*Id.*). These limitations closely identify with the lifting and carrying requirements of medium exertional work. (*Id.*).

Because the ALJ's opinion that Plaintiff can perform medium exertion work is based on substantial evidence of treating physicians and a non-treating, examining physician, it is due to be affirmed. *See Shepherd v. Berryhill*, No. 16-117-C, 2017 WL 2912501 at *4 (S.D. Ala. July 7, 2017) (citing *Himes v. Comm'r*, 585 Fed. Appx. 758, 762 (11th Cir. Sept. 26, 2014) (per curiam)).

Finally, to the extent that Plaintiff's brief can be read to argue that the ALJ erred in failing to rely on testimony from the Vocational Expert ("VE") (Doc. #12 at 9-10), that argument also misses the mark. The VE was asked specific questions regarding existing light or sedentary jobs in the national economy, not about existing medium exertion jobs in the national economy. (Tr. 57). But there is no error where the ALJ was under no duty to elicit *any* testimony from a VE since the ultimate decision was made that Plaintiff could perform the full range of his past relevant work.[6] (Tr. 23, 26). *See Hennes v. Comm'r*, 130 Fed. Appx. 343, 346 (11th Cir. 2005) ("VE testimony is not required in determining whether a claimant can perform [his] past relevant work."); *see also Lucas v. Sullivan*, 918 F.2d 1567, 1573 n. 2 (11th Cir. 1990). The VE

---

[6] Importantly, the ALJ specifically found that claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Tr. 24). *See Mijenes v. Comm'r*, -- Fed. Appx. --, 2017 WL 1735236 at *6 (11th Cir. 2017) (concluding that where the ALJ articulated clear reasons for discrediting subjective complaints and those reasons are supported by substantial evidence, the finding of the ALJ will not be disturbed). As explained earlier, consultative medical examinations revealed 5/5 hand grip in both upper extremities, 5/5 motor strength with normal muscle tone and bulk, and normal sensation and reflexes. (Tr. 25-26, 328).

identified Plaintiff's past work and explained that it was generally performed in the national economy at the medium level. (Tr. 54-57). The ALJ was permitted to compare Plaintiff's RFC with his past relevant work and determine that Plaintiff could return to that work as it is typically performed. (Tr. 23-26). Therefore, even had Plaintiff properly raised this argument, he would not be able to demonstrate any error. The decision of the Commissioner is due to be affirmed.

## VI.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this July 21, 2017.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE